Evan J. Smith (SBN 242352)
Ryan P. Cardona (SBN 302113)
BRODSKY & SMITH, LLC
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Tel:    877.534.2590
Fax:    310.247.0160
Email: esmith@brodskysmith.com
       rcardona@brodskysmith.com

*Attorneys for Plaintiff*

Tarifa B. Laddon (SBN 240419)
Amanda Semaan (SBN 293896)
FAEGRE BAKER DANIELS LLP
11766 Wilshire Blvd., Suite 750
Los Angeles, CA 90025
Tel:    310.500.2090
Fax:    310.500.2091
Email: tarifa.laddon@faegrebd.com

*Attorneys for Defendant*

FILED
CLERK, U.S. DISTRICT COURT
MAY 14 2019
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT SALNICK,<br><br>      Plaintiff,<br><br>vs.<br><br>AMERON POLE PRODUCTS, LLC,<br><br>      Defendant, | Civil Case No.: 2:17-cv-00359-CBM(JCx)<br><br>[~~PROPOSED~~] **CONSENT DECREE**<br><br>JS6<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

CONSENT DECREE      Civil Case No.: 2:17-cv-00359-CBM(JCx)

US.117907935.01

## CONSENT DECREE

The following Consent Decree is entered into by and between Matt Salnick ("Plaintiff") and Ameron Pole Products, LLC ("Ameron"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Plaintiff is a citizen of the State of California.

**WHEREAS,** Plaintiff is concerned with the environmental health of the Sespe Creek and overall Santa Clara River Watershed, of which the Sespe Creek is a part, and uses and enjoys the waters of the Sespe Creek, its inflows, outflows and other waters of the Santa Clara River Watershed;

**WHEREAS,** Ameron is the owner and operator of a facility that operates as a manufacturer of traditional and contemporary concrete poles located at 1020 B Street, Fillmore, CA 93015, hereinafter referred to by the Settling Parties as the "Facility;"

**WHEREAS,** Plaintiff's use and enjoyment of these waters are negatively affected by the pollution allegedly caused by the operations at the Facility;

**WHEREAS,** Plaintiff acts in the interest of the general public to prevent pollution in these waterways, for the benefit of their ecosystems, and for the benefits of all individuals and communities who use these waterways for various recreational, educational, and spiritual purposes;

**WHEREAS,** the discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES"), General Permit No. CAS000001, [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit"), and as amended by Order No. 2014-0057-DWQ ("IGP"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS,** the Facility is listed as operating under SIC Code 3272, relating to Concrete Products, except Block and Brick. Defendant applied for coverage under the California Industrial General Permit on March 27, 1992, and was issued WDID No. 4 56I001604. Defendant reapplied for coverage under the 2015 Industrial Stormwater Permit on April 1, 2015, and was granted the continued use of its previously issued WDID No. The March 27, 1992, and April 1, 2015 "Notice of Intents" for the Facility

to comply with the terms of the Industrial Stormwater Permit list "Ameron Pole Product" and "Ameron Pole Products" as the Operator and Facility names, respectively;

**WHEREAS**, on October 13, 2016, Plaintiff sent Ameron, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Regional Water Quality Control Board – Los Angeles Region ("Regional Board") a notice of intent to file suit ("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) and violations of the 1997 Storm Water Permit and the IGP at the Ameron Facility[1];

**WHEREAS**, on January 17, 2017, Plaintiff filed a complaint against Ameron in the United States District Court, Central District of California (Case No.), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Ameron Facility ("Complaint");

**WHEREAS**, Plaintiff alleges Ameron to be in violation of the substantive and procedural requirements of the 1997 Storm Water Permit, the IGP and the Clean Water Act with respect to the Ameron Facility;

**WHEREAS**, on March 10, 2017, Ameron filed an answer in response to the Complaint, denying all allegations in the Notice Letter and Complaint relating to the Ameron Facility ("Answer");

**WHEREAS**, on August 30, 2017, Ameron uploaded a 2016-2017 Storm Water Season Level 1 Exceedance Response Action Evaluation & Report (the "Level 1 ERA Report"), prepared by its QISP, adding revised and additional BMPs to the Facility's monitoring and reporting program with the goal of preventing future numeric action level exceedances, and to comply with the IGP;

**WHEREAS**, on September 26, 2017, Plaintiff's consultant conducted an inspection of the Facility;

**WHEREAS**, on October 3, 2017, Ameron uploaded a revised SWPPP to SMARTS, attached and incorporated herewith as Exhibit A, containing the BMPs described in the August 30, 2017, Level 1 ERA

---

[1] For purposes of this Consent Decree, the NPDES permit and any amendments thereto in effect at the time of Ameron's required compliance with the terms of this Consent Decree shall be referred to as "the Industrial General Permit" or "IGP."

Consent Decree 3 Civil Case No. 2:17-CV-00546

Report;

WHEREAS, Ameron continues to deny all allegations in the Notice Letter and Complaint relating to the Ameron Facility;

WHEREAS, Plaintiff and Ameron have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings; and

WHEREAS, all actions taken by Ameron pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2. Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Ameron Facility is located within this District;

3. The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4. Plaintiff has standing to bring this action;

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I. **OBJECTIVES**

It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged by Plaintiff in his Complaint. Specifically, Ameron agrees to comply with Receiving Water Limitation VI.A. in the IGP which requires that Ameron "shall ensure that industrial storm water discharges ... do not cause or contribute to the exceedance of any applicable water quality standards in any affected receiving water," and Effluent Limitation V.A. of the IGP which requires that Ameron "shall implement

Best Management Practices ("BMPs") that comply with the BAT/BCT requirements of the [IGP] to reduce or prevent discharges of pollutants in [Ameron's] storm water discharge in a manner that reflects best industry practice considering technological availability and economic practicability and achievability." Ameron shall develop and implement BMPs necessary to achieve compliance with BAT/BCT standards and with the applicable water quality standards as those terms are defined by the IGP. Nothing herein shall be interpreted as an admission by Ameron that it has previously failed to comply with these or any other requirements of the CWA or the IGP.

## II. AGENCY REVIEW AND TERM OF CONSENT DECREE

**A. Agency Review and Comment.** Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Ameron if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

**B. Effective Date.** The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

**C. Termination Date.** This Consent Decree shall terminate two (2) years after the Effective Date ("Termination Date"), or at such time as Ameron ceases to have stormwater discharges subject to the IGP and Ameron: 1) files all necessary and appropriate submissions regarding the same to the State Board and/or the Regional Board; and 2) provides notice of such filing to Plaintiff, unless there is a prior ongoing, unresolved dispute regarding Ameron's compliance with this Consent Decree.

## III. POLLUTION CONTROL REQUIREMENTS

**A. Storm Water Pollution Reduction Measures**

    1. The storm water pollution control measures required by this Consent Decree shall be designed and operated to manage storm water discharges, through full compliance with the IGP.

**2.** Commencing from the Effective Date through the termination date, Ameron shall engage in the following activities to achieve compliance with the Permit and this Consent Decree:

    **(a)** Ameron will appoint a Qualified Industrial Storm Water Practitioner ("QISP") within sixty (60) days after the Effective Date;

    **(b)** Certify and submit to Plaintiff, the Court and the RWQCB via SMARTS the QISP's identification number, name, and contact information (telephone number, e-mail address).

**3.** In addition to the activities described in Sections III.A.2(a) above, Ameron will assure the incorporation of the following BMPs, as more fully described in Ameron's SWPPP, which shall be implemented at the Facility, the boundaries of which are outlined on the Ameron Facility Site Map accompanying the SWPPP ("Site Map"), (the SWPPP and Site Map are attached as Exhibit "A" hereto). The Parties agree that the SWPPP may be modified from time to time as more fully described in this Consent Decree. In the event of a modification to the SWPPP or Facility Site Map during the term of this Consent Judgment, Ameron will provide a copy of the revised exhibits to Plaintiff and the Court in the manner described herein, and to the RWQCB via SMARTs.

    **(a) Non-Structural BMPs**

        **(i) Good Housekeeping**

            a) Observe and maintain industrial activity outdoor areas;

            b) Minimize or prevent material tracking offsite;

            c) Minimize dust generated by industrial activities;

            d) Cleanup areas affected by rinse and wash water;

            e) To the extent practical, cover stored industrial materials that can be readily mobilized by contact with storm water;

            f) Contain stored non-solid industrial materials or wastes;

            g) Prevent improper disposal of rinse/wash waters; and

            h) Minimize flows of offsite storm water and NSWDs into material handling areas.

            i) Waste receptacles exposed to storm water shall be tightly closed or otherwise covered when not in use, to the extent practicable.

(ii) **Preventative Maintenance**

    a) Identify industrial equipment and systems that may leak;

    b) Observe the equipment and systems to detect leaks;

    c) Establish a schedule for maintenance; and

    d) Establish procedures for maintenance and repair.

(iii) **Spill Prevention and Response Procedures**

    a) Establish procedures and/or controls to minimize spills and leaks;

    b) Develop and implement spill and leak response procedures to prevent industrial materials from being discharged;

    c) Clean up spills and leaks promptly;

    d) Identify and describe needed spill and leak response equipment; and

    e) Train Storm Water Team in appropriate spill response.

(iv) **Material Handling and Waste Management**

    a) Prevent or minimize handling of industrial materials or wastes that can be readily mobilized;

    b) Utilize engineered solution for liquid materials or wastes stored outdoors to the extent possible;

    c) Cover industrial waste disposal containers and industrial material storage containers that contain industrial materials to the extent practicable when the facility is not in operation;

    d) Divert run-on and storm water generated from the Facility, within the Facility, away from all stockpiled materials to the extent possible;

    e) Observe and clean as appropriate any outdoor material or waste that could cause contamination to storm water if contact is made.

(v) **Employee Training.** Ameron will provide sufficient training to Ameron team members assigned to perform activities required by the SWPPP including:

    a) Preparing or acquiring necessary and appropriate training materials;

        **b)** Providing a training schedule; and

        **c)** Maintaining training documentation.

    **(vi)** **Quality Assurance and Record Keeping**

        **a)** Develop and implement management procedures to ensure implementation of plans;

        **b)** Develop a method of tracking and recording program implementation; and

        **c)** Maintain implementation records (i.e., BMP deployment records, employee training logs, spill occurrence and clean-up records).

**(b)** **Advanced BMPs.** Advanced BMPs, as set forth below, and in addition to what has already been included in the revised SWPPP uploaded to SMARTS on October 3, 2017 (incorporated herewith) will be implemented in order to prevent and reduce storm water contact with industrial pollutants, including:

    **(i)** Ameron will cover with appropriate material all raw product containing zinc and aluminum stored outside and utilized at the Facility up through the time such raw material is utilized in the production process. The SWPPP will be amended to include the above description in the appropriate BMP sections;

    **(ii)** Scrap Metals and Cement will be added to the SWPPP's list of Industrial Materials; and

    **(iii)** The Facility Site Map will be revised to include residential homes across the street from the Facility.

**4.** Within forty-five (45) days after the Effective Date, Ameron shall revise the SWPPP for the Ameron Facility to include any BMPs required by the Consent Decree and comply with all provisions of the Permit.

**5.** Ameron shall submit its SWPPP, including any revisions, to Plaintiff for review and comment. Plaintiff shall provide comments, if any, to Ameron within sixty (60) days of receipt of the SWPPP. Ameron shall incorporate Plaintiff's comments into the SWPPP, or shall justify in writing why any comment is not incorporated within fifteen (15) days of receiving comments.

US.117907935.01

6.      Throughout the term of this Consent Decree, Ameron shall submit any SWPPP revisions made pursuant to the requirements of this Section III.A to Plaintiff for review and comment within ten (10) days of the SWPPP revision. Plaintiff will provide comments, if any, to Ameron within thirty (30) days of receipt of such revised SWPPP. Ameron shall incorporate Plaintiff's comments into the SWPPP or shall justify in writing why any comment is not incorporated within fifteen (15) days of receiving comments.

**B.      Numeric Action Level ("NAL") for Discharges from the Ameron Facility.** Ameron acknowledges that Numeric Action Levels ("NALs") in the IGP are applicable to the Facility and that it will continue to act in conformity with the IGP and the SWPPP for the Facility, as may be amended from time to time.

   **1.      Exceedance Response Actions (ERAs)**

   a.      Ameron acknowledges that it is required to comply with the Exceedance Response Action requirements of the permit as stated in IGP § XII.

**C.      Sampling and Analysis**

   1.      Ameron has installed a recording rain gauge capable of recording rainfall to 0.1 inches at the Ameron Facility. Ameron shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data in Ameron's Monitoring Report described in Part F below for the term of this Consent Decree. In the event there is a dispute about the quantity of rainfall at the Facility, the rain gauge installed pursuant to this section shall be deemed to be the actual rainfall at the site.

   2.      Within ninety (90) days of the Effective Date, Ameron shall review its plan for monitoring all storm water discharges from the Ameron Facility that meet the requirements of this Consent Decree and Section XI of the Permit, and incorporate the same into its SWPPP.

   3.      Ameron shall submit any revisions to its Monitoring Plan for the Ameron Facility to Plaintiff for review and comment. Plaintiff shall provide comments, if any, to Ameron within thirty (30) days of receipt of the Monitoring Plan. Ameron shall incorporate Plaintiff's comments into the Monitoring Plan, or shall justify in writing why any comment is not incorporated within fifteen (15) days of receiving

comments.

4. During the life of this Consent Decree, and as set forth in the IGP, Ameron shall collect samples of any Qualifying Storm Event ("QSE"), as defined in the IGP, from at least one QSE during each quarter of each reporting year from each sampling point at the Ameron Facility in conformity with its "Monitoring Plan" and in compliance with the IGP. However, nothing herein shall require Ameron to conduct sampling in quarters when a QSE, as defined by the IGP, does not occur.

5. Ameron shall comply with the analytical methods as required by Section XI.B of the IGP as more fully described in the Monitoring Plan.

6. Ameron shall request that results of all sample analyses required by this Consent Decree be reported to it within thirty (30) days of laboratory receipt of the sample.

7. During the term of the Consent Decree, Ameron will give notice to Plaintiff of the filing of any reports or other documents containing the complete laboratory results of samples collected as required by this Consent Decree concurrently with the posting of the same on SMARTS.

**D.    Visual Observations.** During the life of this Consent Decree, Ameron shall conduct and document visual observations pursuant to Section XI.A of the IGP and as more fully described in the Ameron SWPPP.

**E.    Annual Comprehensive Facility Compliance Evaluation.** Ameron shall give notice, pursuant to Paragraph VII.E. hereof, to Plaintiff when Ameron submits an Annual Comprehensive Facility Compliance Evaluation ("Annual Evaluation") to the State Board no later than July 15 of each year during the term of this Consent Decree. The Annual Evaluation shall contain all information required by the IGP and/or the SWPPP.

## IV. MONITORING AND REPORTING

**A.    Site Inspections.**

1. Once during the life of this Consent Decree, Plaintiff may conduct an inspection of the Facility up to forty-five (45) days prior to the Termination Date. Up to three (3) of Plaintiff's representatives may attend the site inspection. The site inspection shall occur during normal business hours. Plaintiff and Ameron shall work in good faith to select a mutually acceptable date for the

inspection, which will be scheduled at least ten (10) business days in advance. Ameron's personnel or contractors may accompany Plaintiff's representative(s) throughout the inspection.

    **2.** Plaintiff shall provide Ameron with any comments regarding the Site Inspection within seventy-two (72) hours of the completion thereof. Said comments shall be prepared, signed and certified by Plaintiff's designated QISP. Ameron shall respond to Plaintiff's comments within thirty (30) days of the date on which they are received; however, Ameron is not obligated to respond to any comments regarding the Site Inspection received after seventy-two (72) hours has passed.

**B.**    **Compliance Monitoring and Oversight.** Ameron shall make a one-time payment of Fifteen Thousand Dollars ($15,000.00) to compensate Plaintiff's Counsel for costs and fees to be incurred for monitoring Ameron's compliance with this Consent Decree. Payment shall be made within fourteen (14) business days of the Effective Date payable to "Brodsky & Smith, LLC" via U.S. Mail.

**C.**    **Ameron Document Provision.** During the life of this Consent Decree, within ten (10) days, Ameron shall give notice to Plaintiff of all documents related to storm water quality at the Ameron Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county, or municipality. Any correspondence related to Ameron's compliance with the Permit or storm water quality received by Ameron from any regulatory agency, state or local agency, county, or municipality shall be provided to Plaintiff within ten (10) days of receipt by Ameron. Provided, however, that this Consent Decree shall not require Ameron to disclose any information or documents subject to the Attorney Client Privilege or the Attorney Work Product doctrine.

**V. ENVIRONMENTAL PROJECT & REIMBURSEMENT OF LITIGATION FEES & COSTS**

**A.**    **Environmental Project.** To remediate the alleged environmental harms resulting from non-compliance with the 1997 Storm Water Permit and IGP alleged in the Complaint, Ameron agrees to make a payment of Eight Thousand Five Hundred Dollars ($8,500.00) to "The Nature Conservancy" and mailed to The Nature Conservancy, attention E.J. Remson, 601 South Figueroa Street, Suite 1425, Los Angeles, CA 90017 to fund the Santa Clara River Conservation Program, dedicated to the acquisition, restoration and creation of aquatic, riparian and other important habitats in the Santa Clara River Watershed. The payment shall be made within fourteen (14) business days of the Effective Date.

B.  **Reimbursement of Attorneys' Fees and Costs.** Ameron shall pay a total of Fifty-One Thousand Five Hundred Dollars ($51,500.00) to "Brodsky & Smith, LLC" for their investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made payable to "Brodsky & Smith, LLC" within fourteen (14) business days of the Effective Date via U.S. Mail.

VI. **DISPUTE RESOLUTION AND RETENTION OF JURISDICTION**

A.  **Continuing Jurisdiction.** This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, unless a Party files and is granted a timely motion requesting an extension of time for the Court to retain jurisdiction. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

B.  **Meet and Confer.** A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying the other Party in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice. The Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

C.  **Dispute Resolution.** If the Parties cannot resolve a dispute by the end of meet and confer informal negotiations, then the parties shall attempt to settle the dispute through mediation provided by the American Arbitration Association ("AAA") pursuant to AAA's Commercial Mediation Provisions in effect at the time the act or acts being disputed occurred.

D.  **Burden of Proof.** In any dispute resolution proceeding, the Party invoking the dispute resolution procedures provided herein shall have the burden of demonstrating that the other Party has failed to meet its obligations as set forth herein.

E.  **Enforcement Fees and Costs.** If formal dispute resolution is not successful, then the parties may file a motion to enforce the settlement with the Court. The litigation costs and fees incurred in prosecuting a motion to enforce such shall be awarded to the prevailing party.

US.117907935.01

## VI. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

**A.     Plaintiff's Public Release of Claims.** This Consent Judgment is a final and binding resolution between Plaintiff, on his own behalf, and on behalf of the public and in the public interest, and Ameron, and their parents, subsidiaries, affiliated entities under common ownership, directors, officers, agents, employees, attorneys, if any (collectively "Releasees"), and shall have a preclusive effect such that no other person or entity, whether purporting to act in his, her, or its interests or the public interest shall be permitted to pursue and/or take any action with respect to any violation of the CWA that was alleged in the Complaint, or that could have been brought pursuant to the Notice. Nothing in this Consent Decree waives the rights of the United States to enforce its rights under Federal Law.

**B.     Plaintiff's Release of Additional Claims.** As to Plaintiff for and in his individual capacity only, this Consent Judgment shall have preclusive effect such that he shall not be permitted to pursue and/or take any action with respect to any other statutory or common law claim, to the fullest extent that any of the foregoing were or could have been asserted by him against Ameron or the Releasees based on the facts alleged in the Complaint and the Notice, whether or not based on actions committed by Ameron.

**C.     Waiver of Rights Under Section 1542 of the California Civil Code**

    1.     Plaintiff acting in his individual capacity waives all rights to institute any form of legal action, and releases all claims against Ameron, and the Releasees, (referred to collectively in this Section as the "Claims"). In furtherance of the foregoing, Plaintiff waives any and all rights and benefits which he now has, or in the future may have, conferred upon him with respect to the Claims by virtue of the provisions of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

    2.     Plaintiff understands and acknowledges that the significance and consequence of this waiver of California Civil Code § 1542 is that even if Plaintiff suffers future damages arising out of or resulting from, or related directly or indirectly to, in whole or in part, the facts in the Complaint, Plaintiff

will not be able to make any claim for those damages against Releasees.

**D.    Ameron's Release of Plaintiff.**  Ameron, on behalf of itself, its past and current agents, representatives, attorneys, successors and/or assignees, hereby waives any and all claims against Plaintiff, his attorneys, and other representatives for any and all actions taken or statements made (or those that could have been taken or made) by Plaintiff and his attorney and other representatives, whether in the course of investigating the Claims or otherwise.

**E.    Parties' Release.**  Unless specifically provided for in this Consent Decree, the Parties, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, all other Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from any additional attorneys' fees or expenses related to the resolution of this matter.

**F.**    Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Ameron's compliance with the IGP or the Clean Water Act occurring or arising after the Effective Date of this Consent Decree.

**VII.    MISCELLANEOUS PROVISIONS**

**A.    No Admission of Liability.**  Neither this Consent Decree, the implementation of additional or modified BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Ameron maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

**B.    Construction.**  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the IGP, the Clean Water Act, or

specifically herein.

C.   **Choice of Law and Venue.** The laws of the United States shall govern this Consent Decree, with venue proper only in the Central District of California.

D.   **Severability.** In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

E.   **Correspondence and Notices.** Any and all notices and/or correspondence between the Parties provided for or permitted under this Consent Decree shall be in writing and personally delivered or sent by:

   1.   First-class (registered or certified) mail return receipt requested; or
   2.   Overnight or two-day courier; or
   3.   By email with confirmed receipt only (thus at the risk of the email sender); on any Party by the other Party to the following addresses:

**If to Plaintiff:**

Evan J. Smith, Esquire
Brodsky & Smith, LLC
Two Bala Plaza, Suite 510
Bala Cynwyd, PA 19004
T: 877.354.2590
Email: esmith@brodskysmith.com

**If to Ameron:**

Tarifa B. Laddon, Esquire
Faegre Baker Daniels LLP
11766 Wilshire Blvd., Suite 750
Los Angeles, CA 90025
T: 310.500.2090
Email: tarifa.laddon@faegrebd.com

Any change of address or addresses shall be communicated in the manner described above for giving notices.

F.   **Counterparts.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, or facsimile copies

of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

**G. Modification of the Consent Decree.** Except as otherwise provided herein, this Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties, or upon motion of any Party as provided by law and upon an entry of a modified Consent Judgment by the Court. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

**H. Full Settlement.** This Consent Decree contains the sole and entire agreement and understanding of the Parties with respect to the entire subject matter hereof, and any and all discussions, negotiations, commitments and understandings related thereto. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto. No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties.

**I. Integration Clause.** This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the Consent Decree between the Settling Parties and expressly supersedes any and all prior oral or written Consent Decrees, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

**J. Authority of Counsel.** The undersigned representatives for Plaintiff and Ameron each certify that he/she is fully authorized by the party whom he/she represents to approve this Consent Decree as to form.

**K. Authority.** Ameron certifies that its undersigned representative is fully authorized to enter into this Consent Decree, to execute it on behalf of Ameron, and to legally bind Ameron to its terms.

**L. Agreement to be Bound.** The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

US.117907935.01

## VIII. COURT APPROVAL

The Parties hereby respectfully request that the Court promptly approve and enter this Consent Decree. Upon entry of this Consent Decree, Plaintiff and Defendant waive their respective rights to a hearing or trial on the allegations of the Complaint and Notice which are at issue in this action. If this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

**SO AGREED AND APPROVED AS TO CONTENT**

Dated: 3/12/2019

PLAINTIFF

Matt Salnick

Dated: 03/11/2019

**AMERON POLE PRODUCTS, LLC**

By: _____
Alexandra Besse
VP and General Manager, Ameron Pole Products

**APPROVED AS TO FORM**

Dated: 3/12/2019

**BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith (SBN:242352)
Attorneys for Plaintiff

Dated: 3/11/19

**FAEGRE BAKER DANIELS LLP**

By: _____
Tarifa B. Laddon (SBN:240419)
Attorneys for Ameron Pole Products, LLC

**IT IS SO ORDERED.**

---

Consent Decree | 17 | Civil Case No. 2:17-CV-00546

US.117907935.01

## VIII. COURT APPROVAL

The Parties hereby respectfully request that the Court promptly approve and enter this Consent Decree. Upon entry of this Consent Decree, Plaintiff and Defendant waive their respective rights to a hearing or trial on the allegations of the Complaint and Notice which are at issue in this action. If this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

**SO AGREED AND APPROVED AS TO CONTENT**

Dated: _____  **PLAINTIFF**

_____
Matt Salnick

Dated: _____  **AMERON POLE PRODUCTS, LLC**

By:_____
   Alexandra Besse
   VP and General Manager, Ameron Pole Products

**APPROVED AS TO FORM**

Dated: _____  **BRODSKY & SMITH, LLC**

By:_____
   Evan J. Smith (SBN:242352)
   Attorneys for Plaintiff

Dated: _____  **FAEGRE BAKER DANIELS LLP**

By:_____
   Tarifa B. Laddon (SBN:240419)
   Attorneys for Ameron Pole Products, LLC

**IT IS SO ORDERED.**

Date: 5/14/19

_____
The Honorable Conseulo B. Marshall
United States District Court Judge
Central District of California